

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-14-00097-CV

Luis Alfredo **ROSA** and Myrna Lizzet Rosa,
Appellants

v.

**MESTENA OPERATING, LLC**,
Appellee

From the 79th Judicial District Court, Brooks County, Texas
Trial Court No. 13-12-16486-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:   Karen Angelini, Justice
Sandee Bryan Marion, Justice
Marialyn Barnard, Justice

Delivered and Filed:  December 17, 2014

AFFIRMED

After he suffered an on-the-job injury, Luis Alfredo Rosa and his wife, Myrna Lizzet Rosa, brought claims for negligence and premises liability against property owner Mestena Operating, LLC. Mestena moved for traditional and no-evidence summary judgment on multiple grounds, including chapter 95 of the Texas Civil Practice and Remedies Code, which governs property owner liability for the acts of independent contractors. The trial court granted the summary judgment based on chapter 95 and rendered a take-nothing judgment. On appeal, the Rosas argue

the trial court erred in granting summary judgment against them because chapter 95 does not apply to their claims. We conclude that it does apply, and therefore, affirm the trial court's judgment.

BACKGROUND

On September 14, 2009, Mr. Rosa was injured at work while performing maintenance on wooden electrical poles situated on real property located in Brooks County, Texas, and owned by Esteban Garcia. AEP Texas Central Company, a utility company, had an easement on the Garcia property. AEP had contracted with Quality Pole Inspection and Maintenance, Inc., to perform maintenance on its poles on the Garcia property. Mr. Rosa was employed by Quality Pole.

Mestena, an operator of oil and gas wells, holds a mineral lease on the Garcia property. Mestena operates numerous oil and gas wells on the Garcia property. Mestena did not have a contractual relationship with Quality Pole.

In their pleadings, the Rosas alleged that Mr. Rosa, while working on a pole on AEP's easement, came into contact with an energized ground wire and suffered an electric shock. The ground wire was connected to equipment on Mestena's mineral lease. The Rosas' theory was that Mestena's equipment—specifically a lightening arrester—had malfunctioned and caused the ground wire to be energized when it should not have been. The allegedly faulty equipment was located 1400 feet—almost the length of four football fields—away from the site where Mr. Rosa was injured. The Rosas asserted Mestena knew or should have known about the danger posed by the energized ground wire.

After conducting discovery, Mestena moved for traditional and no-evidence summary judgment. Mestena asserted it was a property owner under chapter 95, and therefore, was entitled to the protection afforded by that statutory scheme. Mestena further argued that the exception to chapter 95's general rule of non-liability did not apply here because there was no evidence that

Mestena had actual knowledge of the alleged dangerous condition that caused Mr. Rosa's injuries and exercised or retained any control over the work done by Mr. Rosa.

In response, the Rosas argued that chapter 95 did not apply to Mestena. According to the Rosas, chapter 95 applied "only to those situations where a property owner hires someone with expertise to repair or renovate some improvement on [its] property and that individual is injured while performing work on the property owner's premises." The Rosas further argued,

> Mestena did *not* contract with anyone in this case, either AEP or Quality Pole, to repair, renovate, or modify any improvement to real property owned by it. Rather, the contract in question involved AEP, as the owner of wooden electrical poles and possessor of a utility easement, who contracted with Quality Pole to repair and renovate its poles located on its easement. Mestena was a stranger to that contract. Accordingly, Chapter 95 does *not* apply to Mestena, and Mestena is not entitled to either a traditional or no-evidence summary judgment under the statute.

(emphasis in original). Additionally, the Rosas argued (1) the summary judgment evidence raised a genuine issue of material fact as to whether Mestena had actual or constructive knowledge of the dangerous condition, and (2) they were not required to introduce evidence on the element of control to avoid summary judgment because chapter 95 does not apply to this case.

The trial court granted the summary judgment, concluding not only that chapter 95 applied to the circumstances of this case, but also that the Rosas produced no evidence raising a fact issue as to the exception articulated in chapter 95. The Rosas appealed.

### STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In a traditional summary judgment motion, the movant bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *id.* at 215-16. In a no-evidence summary judgment motion, the movant asserts there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial. TEX. R. CIV.

P. 166a(i). In responding to a no-evidence summary judgment motion, the nonmovant has the burden to produce evidence that raises a genuine issue of material fact on the challenged elements. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the nonmovant fails to meet his burden to produce evidence that raises a genuine issue of material fact on the challenged elements, then the trial court must grant the motion. TEX. R. CIV. P. 166a(i). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Knott*, 128 S.W.3d at 215.

When, as here, the order granting summary judgment specifies the grounds on which summary judgment was granted, we review the summary judgment on those grounds. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). However, if the summary judgment is not sustainable on the grounds specified by the trial court, we may, in the interest of judicial economy, review other grounds properly preserved by the movant but not considered by the trial court. *See id*.

## CHAPTER 95

Chapter 95 of the Texas Civil Practice and Remedies Code was enacted in 1996 as part of a sweeping tort-reform package. *Montoya v. Nichinrin-Flex U.S.A., Inc.*, 417 S.W.3d 507, 510-11 (Tex. App.—El Paso 2013, no pet.); *Moreno v. BP America Production Co.*, No. 04-08-00036-CV, 2008 WL 4172248, at *1 (Tex. App.—San Antonio 2008, pet. denied). Chapter 95 enunciates a general rule of non-liability for property owners when a contractor or subcontractor or an employee of a contractor or subcontractor is injured on the property owner's property while performing repairs or construction. Under chapter 95, a property owner is not liable for any injury to a contractor, a subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property unless: (1) the property owner exercises or retains control over the manner in which the work is performed; and (2) the property

owner had actual knowledge of the danger or condition resulting in the injury. TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (West 2011).

At trial, the defendant property owner has the burden to establish that chapter 95 applies to the plaintiff's claim. *Montoya*, 417 S.W.3d at 511; *Covarrubias v. Diamond Shamrock Refining Co.*, 359 S.W.3d 298, 301 (Tex. App.—San Antonio 2012, no pet.). Once the property owner has shown that chapter 95 applies to the claim, the burden shifts to the plaintiff to establish that his claim falls under the exception articulated in section 95.003. *Montoya*, 417 S.W.3d at 511; *Covarrubias*, 359 S.W.3d at 301. To establish the exception in the summary judgment context, the plaintiff must present evidence raising a material fact issue on both prongs of section 95.003: (1) that the property owner exercised or retained some control over the work, and (2) that the property owner had actual knowledge of the danger or condition resulting in the injury. *Covarrubias*, 359 S.W.3d at 301; *Gorman v. Meng*, 335 S.W.3d 797, 802-03 (Tex. App.—Dallas 2011, no pet.).

Chapter 95 defines a "property owner" as a person or entity that owns real property primarily used for commercial or business purposes. TEX. CIV. PRAC. & REM. CODE ANN. § 95.001(3) (West 2011). In this case, no one disputes that Mestena, a mineral lease owner, is a property owner as defined by section 95.001(3). *See Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 397 (Tex. App.—El Paso 2008, pet. denied) (concluding mineral lessee qualified as a property owner under chapter 95); *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 84 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding defendant was a property owner under chapter 95 because it held the mineral leases pertaining to the premises and under well-settled law a mineral lease conveys a fee simple determinable interest in real property).

DISCUSSION

On appeal, the Rosas argue that the trial court erred in granting summary judgment because chapter 95 does not apply in this case. In their summary judgment response, the Rosas argued that

"chapter 95 applies only in those situations where a property owner hires someone with expertise to repair or renovate some improvement on their property and that individual is injured while performing work on the property owner's property." According to the Rosas, section 95.003 contemplates a "contractual relationship" between a property owner and a contractor for improvements to real property owned by it. The Rosas emphasize that the only contract in this case was the contract between AEP and Quality Pole to renovate and repair poles; Mestena was a stranger to this contract. The Rosas further argue that because Mestena did not have a contractual relationship with a contractor for improvements to real property owned by it, chapter 95 does not apply to this case.[1] Mestena counters that chapter 95, by its plain language, applies to any negligence claim against a property owner for injury to a contractor or a subcontractor or an employee of a contractor or subcontractor, even in the absence of a contract between the property owner and the contractor.

In construing a statute our fundamental objective is to determine and give effect to the legislature's intent. *In re Lee*, 411 S.W.3d 445, 450-51 (Tex. 2013) (orig. proceeding). As the Texas Supreme Court has instructed, "[t]he plain language of the statute is the surest guide to the legislature's intent." *Id.* at 451. If the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). "When a statute is clear and unambiguous, we do not resort to extrinsic aides such as legislative history to interpret the statute." *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 137 (Tex. 2013). We may presume, however, that the legislature acted with

---

[1]In their reply brief, the Rosas attempted to clarify their argument, asserting that chapter 95 requires "*either* a direct contractual relationship between the claimant's employer and the property owner *or* that there be privity of contract between the claimant's employer and the property owner." (emphasis in original).

knowledge of the existing law and with reference to it. *Id*.; *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990).

We now examine the pertinent language of chapter 95, which is found in sections 95.002 and 95.003. Section 95.002, the section of the statute that expressly governs the applicability of chapter 95, does not limit the application of the statute in the manner described by the Rosas. It provides:

> **§ 95.002. Applicability**
>
> This chapter applies only to a claim:
>
> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and
>
> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.002 (West 2011). Nothing in the express language of chapter 95.002 indicates that property owners like Mestena, who did not have a contractual relationship with a contractor, are excluded from the protection afforded by the statute.

Section 95.003 provides:

> **§ 95.003. Liability for Acts of Independent Contractors**
>
> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:
>
> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (West 2011). Like section 95.003, section 95.002 makes no mention of a contractual relationship between the property owner and a contractor.

The Rosas nevertheless contend chapter 95's plain language, its legislative history, and the former law all show that chapter 95 contemplates a contractual relationship between the property owner and a contractor. With regard to the statute's language, the Rosas direct our attention to section 95.003 which provides that a property owner is not liable to an employee of a contractor "unless the property owner exercises some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports." The Rosas argue that the phrase "control over the manner in which the work is performed" imposes a requirement that a contractual relationship exist between the property owner and the contractor. For support, the Rosas rely on *Johnston v. Oiltanking Houston, L.P.*, 367 S.W.3d 412, 416 (Tex. App.—Houston [14th Dist.] 2012, no pet.), where the appellate court explained that "[a] party can prove control through evidence of an agreement that 'explicitly assigns the premises owner a right to control' *or* by evidence that the 'owner actually exercised control over the manner in which the independent contractor's work was performed.'"(emphasis added). Contrary to the Rosas's position, *Johnston* does not stand for the proposition that proof of a contract between a premises owner and a contractor is the only way to establish that a premises owner exercised control. Instead, *Johnston* recognizes that the exercise of control may also be proven through the actual exercise of control. *Id.* at 416-17. We, therefore, reject the Rosas's argument that the statute's plain language requires the existence of a contract between the property owner and a contractor.

The Rosas also contend the former law shows that chapter 95 requires a contract between the premises owner and a contractor. Before the adoption of chapter 95, a Texas property owner

was generally not liable for injuries sustained by an independent contractor because the property owner had no duty to see that an independent contractor performed his work in a safe manner. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1989) (citing *Abalos v. Oil Development Co.*, 544 S.W.2d 627, 631 (Tex. 1976)). However, in *Redinger*, the Texas Supreme Court adopted section 414 of the Restatement (Second) of Torts, which provided an exception to the general rule when a premises owner or a general contractor exercised some control over the work of a subcontractor or an independent contractor. *Id*. Chapter 95, and more specifically section 95.003, codified *Redinger*'s requirement that as a prerequisite to liability a property owner must exercise or retain some control over the manner in which the work is performed. *Ellwood Texas Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Sinegal v. Ryan Marine Serv.*, 712 F.Supp.2d 597, 602 (S.D. Tex. 2008). Additionally, section 95.003 further limited a property owner's liability by requiring a plaintiff to prove that the owner had actual knowledge—as opposed to constructive knowledge—of a dangerous condition. *Johnston*, 367 S.W.3d at 416; *Ellwood*, 214 S.W.3d at 700; *Sinegal*, 712 F.Supp.2d at 602. After considering the former law, we cannot say it supports the conclusion that chapter 95 requires the existence of a contract between the property owner and a contractor.

The Rosas finally contend the legislative history shows that chapter 95 contemplates a contractual relationship between the property owner and a contractor. The Rosas, however, do not argue that chapter 95 is ambiguous. Under these circumstances, we are not permitted to resort to legislative history to construe the statute. *See Rodriguez*, 399 S.W.3d at 137 (noting that when a statute is clear and unambiguous as written, courts are not permitted to resort to legislative history to construe the statute). But even if we could consider this argument, the result would be no different. The Rosas's legislative history argument focuses on a comment made by one legislator. "Statements made during the legislative process by individual legislators or even a unanimous

legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011).

We conclude that, by its plain language, chapter 95 is not limited to situations where a contract exists between the property owner and a contractor. We, therefore, hold that chapter 95 applied to the situation presented in this case.

The Rosas also argue on appeal that chapter 95 did not apply here because the real property to which the improvements were made was not the same real property that qualified Mestena to be a property owner. However, because this argument was not presented in the Rosas's summary judgment response, we may not consider it on appeal. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c).

## CONCLUSION

Under the plain language of the statute, chapter 95 applied to this case. Thus, the trial court correctly concluded that Mestena met its summary judgment burden to show that chapter 95 applied. Because Mestena met its burden, the burden shifted to the Rosas to raise a material fact issue as to whether (1) Mestena exercised or retained some control over the manner in which the work was performed, and (2) Mestena had actual knowledge of the danger or condition resulting in the injury and failed to adequately warn. As the Rosas acknowledged in the trial court, and now concede on appeal, no evidence existed that Mestena exercised or retained control over the manner in which Rosa's work was performed. Therefore, the trial court did not err in granting summary judgment under chapter 95. Because we have determined that the summary judgment was sustainable on the grounds specified in the judgment, we need not review the other summary judgment grounds preserved by Mestena but not ruled on by the trial court.

The trial court's judgment is affirmed.

Karen Angelini, Justice