ACCEPTED
04-14-00097-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
1/16/2015 10:33:16 AM
KEITH HOTTLE
CLERK

**Case No. 04-14-00097-CV**

**IN THE COURT OF APPEALS
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
01/16/2015 10:33:16 AM
KEITH E. HOTTLE
Clerk

**LUIS ALFREDO ROSA AND MYRNA LIZZET ROSA,
Appellants**

**v.**

**MESTENA OPERATING, LLC,
Appellee**

**Appealed from the 79th District Court of Brooks County, Texas
The Honorable Richard C. Terrell, Judge Presiding**

**APPELLANTS' MOTION FOR REHEARING**

LAW OFFICES OF
DAVID MCQUADE LEIBOWITZ, P.C.
David McQuade Leibowitz
SBN: 12179800
david@leibowitzlaw.com
Jacob Samuel Leibowitz
SBN: 24066930
jacob@leibowitzlaw.com
One Riverwalk Place
700 N. St. Mary's Street, Suite 1750
San Antonio, Texas 78205
T/210.225.8787;F/210.225.2567

*Attorneys for Appellants*

# TABLE OF CONTENTS

Table of Contents……………………………………………………………………..ii

Index of Authorities…………………………………………………………………iii

Issues Presented for Rehearing …………………………………………………….v

Introduction………………………………………………………………………..1

Argument………………………………………………………………………...4

    I.    Contrary to the Court's holding, the plain language of chapter 95 requires that there be a contractual relationship between the property owner and a contractor for improvements to the property owner's property before the property owner can avail itself of the protections afforded it by section 95.003………………………………………………………………….4

    II.    Contrary to the Court's holding, the common law underlying chapter 95 also requires that there be a contractual relationship between the property owner and a contractor for improvements to the property owner's property before the property owner can avail itself of the protections afforded it under section 414 of the Restatement (Second) of Torts……………………………….…………………………………...13

    III.    The legislative history underlying chapter 95 supports the Rosas' "plain language" analysis of that chapter and was not offered as a substitute for that analysis…………………………………………………..15

    IV.    The Court should consider all arguments that might assist it in properly construing chapter 95……………………………………...……….16

Conclusion………………………………………………………………………...18

Certificate of Compliance………………………………………………………19

Certificate of Service…………………………………………………………...20

# INDEX OF AUTHORITIES

**CASES**                                                      **PAGE**

*Carpenter v. First Texas Bancorp*,
    No. 03-12-00004-CV, 2014 WL 2568494
    (Tex. App. – Austin, June 5, 2014, no pet.) (mem. op.)………………8, 9, 10

*City of Marshall v. City of Uncertain*,
    206 S.W.3d 97 (Tex. 2006)……………………………………………….6

*Evanstad v. State*,
    178 Ariz. 578, 875 P.2d 811(App. 1993)………………………………….18

*Fisher v. Lee and Chang Partnership*,
    16 S.W.3d 198 (Tex. App. – Houston [1st Dist.] 2000, pet. denied)……….16

*Monsanto Co. v. Cornerstones Mun. Util. Dist.*,
    865 S.W.2d 937 (Tex. 1993)…………..…………………………………5, 6

*PCTV Gold, Inc. v. SpeedNet, LLC*,
    508 F.3d 1137 (8th Cir. 2007)…………….…..………………………….16

*Redinger v. Living, Inc.*,
    689 S.W.2d 415 (Tex. 1989)……………………………………………14

*Rosa v. Mestena Operating, LLC*,
    No. 04-14-00097-CV, 2014 WL 7183476
    (Tex. App. – San Antonio, December 17, 2014)
    …………………………………………………...1, 3, 7, 11, 13, 14, 15, 16

## STATUTES

TEX. CIV. PRAC. & REM. CODE chp. 95……………………………………*passim*

TEX. CIV. PRAC. & REM. CODE §95.002………………………………...4, 5, 6, 10

TEX. CIV. PRAC. & REM. CODE §95.003………………………………...v, 4, 5, 6, 10

TEX. CIV. PRAC. & REM. CODE §95.003(1)………………………………1, 10, 11

## **RULES**

TEX. R. APP. P. 9.4(i)……………………………………………………………...19

TEX. R. APP. P. 9.4 (i)(1)…………………………………………………………..19

## **OTHER AUTHORITIES**

*Black's Law Dictionary* (9th ed. 2009)…………………………………………..6

RESTATEMENT (SECOND) OF TORTS §414 (1965)………………………….v, 13, 14, 15

*Webster's Ninth New Collegiate Dictionary* (1989)………………………………..6

## ISSUES PRESENTED FOR REHEARING

1. Did the Court err in holding, on the basis of chapter 95's plain language, that Mestena was entitled to the protections afforded property owners under that chapter, even though the improvements to the real property in this case were made to someone else's property, not Mestena's; even though the injury giving rise to the lawsuit occurred on someone else's property, not Mestena's; and even though Mestena did not have a contract with anyone for improvements to its own real property?

2. Did the Court err in holding, on the basis of chapter 95's plain language, that the chapter does *not* require a contractual relationship between the property owner and a contractor for improvements to the property owner's real property before the property owner can avail itself of the protections afforded it by section 95.003 in a lawsuit brought against the property owner by the contractor, its subcontractors, or their employees?

3. Under a "plain language" analysis, does the reoccurrence of the words "contractor," "subcontractor," "employee of a contractor or subcontractor," "independent contractor," and "property owner" throughout chapter 95 have any significance with regard to the statute's applicability?

4. Under a "plain language" analysis, does the limitation on property owner liability vis-à-vis a "contractor," a "subcontractor," and an "employee of a contractor or subcontractor," rather than other categories of persons, have any significance with regard to the statute's applicability?

5. Did the Court err in holding that the common law underlying chapter 95 did *not* require that there be a contractual relationship between the property owner and a contractor for improvements to the property owner's property before the property owner can avail itself of the protections afforded it under section 414 of the Restatement (Second) of Torts?

6. Did the Court err in refusing to consider the legislative history of chapter 95, based on comments made by the bill's sponsor, when that history supports the Rosas' "plain language" analysis?

7. Did the Court err in refusing to consider all arguments that might assist it in properly construing chapter 95, even though one of those arguments may not have been included in the Rosas' summary judgment response?

v

# **INTRODUCTION**

In its opinion, this Court upheld the trial court's summary judgment in favor of Mestena on the grounds that chapter 95 applied to this case as a matter of law, and that the Rosas failed to introduce any summary judgment evidence on the issue of control, as required by subsection 95.003(1) of the chapter. *Rosa v. Mestena Operating, LLC*, No. 04-14-00097-CV, 2014 WL 7183476, *5 (Tex. App. − San Antonio, December 17, 2014). Luis Rosa, as the Court recalls, was electrocuted while repairing electrical poles pursuant to a contract between Rosa's employer, Quality Pole Inspection & Maintenance Co., and AEP Texas Central Company.[1] AEP owned the electrical pole that Rosa was working on at the time of the accident and the utility easement on which the pole was located. The utility easement, in turn, was located on property owned by Esteban Garcia.

Mestena, on the other hand, was an operator of oil and gas wells and held the mineral lease to the Garcia property along with its accompanying surface easement. Mestena used its surface easement to install a pump jack at the Garcia 12 well. Next to the pump jack was a utility pole that Mestena owned, and on that pole, a utility box containing electrical equipment to power the pump jack. The utility pole was located 1,400 feet from the pole Rosa was working on at the time

---

[1] Record references to all factual statements appearing herein are set out in the Appellants' Brief and Reply Brief. Appellants have restated the pertinent facts to aid the Court in its understanding of the points for rehearing.

of the accident and connected to it by wires. Mestena obtained the electricity it used to power its pump jack from AEP and was responsible for the care and maintenance of all equipment installed and operated by it in connection with its use of the surface easement. Rosas alleged that Mestena was responsible for the accident because it failed to timely replace a lightning arrester located in the utility box next to the pump jack. The lightning arrester operated as a type of surge protector and served to direct the electrical surge from a lightning strike into the ground. With the lightning arrester blown as a result of a lightning strike, the electrical surge from a subsequent lightning strike had nowhere to go but back to the AEP pole, leaving the wires there energized at the time Rosa arrived to work on it.

As one can see, Mestena did not own or control the property where the accident occurred. AEP owned and/or controlled that property. Mestena did not have a contractual relationship with AEP, Quality Pole, Rosa, or anyone for that matter for repairs to property owned or controlled by it. The repairs were directed toward AEP's property pursuant to a contract between Quality Pole and AEP, and the accident occurred there in connection with those repairs. Despite having no relationship to the property where the accident occurred (other than alleged responsibility for the dangerous condition existing there), or the work performed on that property, Mestena argued that Chapter 95 applied to this case. As a result,

according to Mestena, the Rosas would have to demonstrate that Mestena had control over the operative details of Rosa's work at the time of the accident – even though the work was occurring on someone else's property pursuant to a contract to which Mestena was a stranger -- and that it had actual knowledge of the dangerous condition existing at the workplace at the time of the accident -- even though the workplace was situated on someone else's property -- before it could be held liable for Rosa's injuries.

This Court agreed with Mestena, basing its agreement upon the following conclusions: (i) the plain language of chapter 95 does not require that property owners like Mestena have a contractual relationship with a contractor for improvements to the property owner's property in order for the property owner to be afforded the chapter's protection in any lawsuit brought by the contractor, its subcontractors, or their employees; (ii) the common law underlying chapter 95 supports this "plain language" interpretation; (iii) the Court is not permitted to consider the legislative history underlying chapter 95 when attempting to construe it; and (iv) the Court cannot consider one of the Rosas' arguments in construing chapter 95 because the Rosas failed to present that argument to the trial court in their summary judgment response. 2014 WL 7183476, at *4, *5. In considering these conclusions, one should keep in mind, as Mestena's own counsel acknowledged during oral argument, that this case is one of first impression.

Given that chapter 95 became effective on September 1, 1996, with extensive litigation occurring under it, that fact in itself should have raised a red flag as to the applicability of chapter 95 to this case.

## ARGUMENT

**I.     Contrary to the Court's holding, the plain language of chapter 95 requires that there be a contractual relationship between the property owner and a contractor for improvements to the property owner's property before the property owner can avail itself of the protections afforded it by section 95.003.**

In rejecting the Rosas' argument that chapter 95 applicability is premised on a contractual relationship between the property owner and a contractor for improvements to the property owner's property, the Court considered the statutory language of section 95.002 (titled "Applicability") and section 95.003 (titled "Liability for Acts of Independent Contractors") and concluded as follows:

> Nothing in the express language of chapter [sic] 95.002 indicates that property owners like Mestena, who did not have a contractual relationship with a contractor, are excluded from the protection afforded by the statute….Like section 95.003, section 95.002 makes no mention of a contractual relationship between the property owner and a contractor.

*Id*. at *4.

But is that correct?  Section 95.002 identifies the categories of persons to whom the chapter applies (i.e., property owners, contractors, and subcontractors) and the types of claims to which the chapter applies (i.e., claims for personal injury, death, or property damage arising from the condition or use of an

4

improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement). Like section 95.002, section 95.003 also identifies categories of persons. It identifies the categories of persons to whom a property owner would not be liable unless certain conditions were met (i.e., contractors, subcontractors, and employees of contractors or subcontractors who construct, repair, renovate, or modify an improvement to real property). In attempting to ascertain the legislative intent underlying the chapter, as based on the chapter's plain language, one has to ask why does the statute address these categories of persons and not others, and why does the statute limit property owner liability vis-à-vis these categories of persons rather than others (e.g., dinner guests). Or for that matter, why is chapter 95 titled "Property Owner's Liability for Acts of Independent Contractors and Amounts of Recovery"? In other words, why does the phrase "property owner" occur in conjunction with the words "contractor," "subcontractor," "employee of a contractor or subcontractor," and "independent contractor" throughout the chapter?

The Court never addressed these questions, even though they are as much a part of a "plain language" analysis as is reviewing two sections of chapter 95 to see whether they contain the word "contract." Since the words "contractor" and "subcontractor" are not defined in the chapter, the Court must apply their ordinary meaning when attempting to ascertain legislative intent from the plain language of

the two sections. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993). According to one dictionary, a "contractor" is "one that contracts or is party to a contract" or "one that contracts to perform work or provide supplies on a large scale." *Webster's Ninth New Collegiate Dictionary* 284 (1989). *Black's Law Dictionary* defines a "contractor" as "a party to a contract," or more specifically, as "one who contracts to do work or provide supplies for another." *Black's Law Dictionary* (9th ed. 2009). Similarly, a "subcontractor" is "an individual or business firm contracting to perform part or all of another's contract." *Webster's Ninth New Collegiate Dictionary* 1173 (1989). It is "[o]ne who is awarded a portion of an existing contract by a contractor, esp. a general contractor." *Black's Law Dictionary* (9th ed. 2009).

Although the word "contract" does not expressly appear in sections 95.002 and 95.003, as the Court noted, it nevertheless forms an integral part of those two sections by virtue of the reoccurrence of the words "contractor" and "subcontractor" and their usage in conjunction with the phrase "property owner." Ascertaining legislative intent on the basis of a statute's plain meaning requires one to presume that *every* word of the statute has been included for a reason, and that effect be given to *every* sentence, clause, *and* word of the statute so that no part of it is rendered superfluous. *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006). If contractors contract, and if subcontractors perform

6

a portion of the work required under a contractor's *existing* contract, as their definitions indicate, might the statutory limitation on property owner liability vis-à-vis contractors and subcontractors presuppose the existence of a contract between the property owner and a contractor for work on the property owner's property?

Although the Court ultimately answered the question in the negative, it initially arrived at the opposite conclusion. At the outset of its discussion on chapter 95, the Court stated the following: "Chapter 95 enunciates a general rule of non-liability for property owners when a contractor or subcontractor or an employee of a contractor or subcontractor is injured *on the property owner's property* while performing repairs or construction." 2014 WL 7183476, at *2. (emphasis added). As a preliminary matter, it should be noted that Rosa was *not* injured on Mestena's property; he was injured on AEP's property. Therefore, on the basis of the above statement, chapter 95 would *not* apply to this case.

Further, if the chapter applies when "a contractor or subcontractor or an employee of a contractor or subcontractor is injured on the property owner's property while performing repairs or construction," it follows that the repairs or construction in question also took place on the property owner's property. After all, how could the injury have occurred there if the repairs or construction did not take place there as well? And, if the repairs or construction took place on the property owner's property, it also follows that the work could have only taken

place on the property owner's property pursuant to a contract with the property owner. After all, work cannot take place on a property owner's property without the property owner's knowledge and without a contract defining the scope of the work. Without consulting the owner and entering into some type of agreement, the contractor and its subcontractors would not know what to do, nor would they get paid. And, if they did not consult the owner prior to initiating work on the property owner's property, then the contractor and subcontractors would be trespassers and precluded from doing any work there. In sum, by acknowledging that chapter 95 applies when a contractor, subcontractor, or an employee of a contractor or subcontractor is injured on the property owner's property, it follows that the work resulting in the injury took place on the property owner's property pursuant to a contract between the property owner and a contractor.

In a recent opinion, the Third Court of Appeals addressed this issue. *Carpenter v. First Texas Bancorp*, No. 03-12-00004-CV, 2014 WL 2568494 (Tex. App. – Austin, June 5, 2014, no pet.) (mem. op.). There, the bank asked the claimant to help it by meeting with the bank's insurance adjuster to point out hail damage to the bank's roof. *Id*. at *1. The claimant did that and, while descending the ladder provided by the bank, injured himself. *Id*. at *1. The claimant sued the bank for negligence and premises liability. *Id*. at *1. The bank moved for summary judgment under chapter 95, and the trial court granted it. *Id*. at *1.

On appeal, the court of appeals held that the chapter did *not* apply to the case, and that the trial court had erred in granting the summary judgment. *Id*. at *3. The court based its decision on the fact that the claimant was not a "contractor" at the time of the accident as contemplated by the statute. *Id*. at *2. Since chapter 95 did not define the word "contractor," the court relied on its ordinary meaning, noting that the word " 'contractor' requires that there be an actual contract under which one party (the contractor) has agreed to perform a specific kind of work or task and be compensated therefor by another party." *Id*. at *1. It went on to note that the bank had failed to identify any summary-judgment evidence conclusively establishing that the claimant was a "contractor" under chapter 95 because "[t]here was no summary-judgment evidence of a written contract *between the parties* for any repair work to be performed by [the claimant]." *Id*. at *2 (emphasis added). The claimant had previously worked for the bank as its roofing contractor and assumed that he would be doing the repair work once matters were resolved with the insurance company. *Id*. at *2. Despite expectations, however, the fact persisted that at the time of the accident the parties had not agreed on the nature of the repairs, on whether the claimant would be the one doing those repairs, and what his compensation would be. *Id*. at *2. "[A]bsent facts supporting the presence of a contract between the parties," therefore, the claimant could not be a "contractor" under the statute. *Id*. at *2.

Here, there was no contract between Mestena and Quality Pole, AEP, or anyone for the work Rosa performed on the electrical pole at the time of his accident. Since there was no summary-judgment evidence supporting the presence of a contract between the *parties*, as required in *Carpenter*, Rosa could not have been "an employee of a contractor or subcontractor" under sections 95.002 and 95.003 at the time of the accident. In sum, if the Court were to consider the words appearing in chapter 95, and not limit its analysis to those words *not* appearing, it will find that the plain meaning of the words that do appear do *not* support the chapter's application to this case.

As to subsection 95.003(1), that subsection requires, as a precondition to property owner liability, that the property owner exercise or retain some control over the manner in which the work was performed, other than the right to order the work to start or stop, or to inspect progress, or to receive reports. TEX. CIV. PRAC. & REM. CODE §95.003(1). The Rosas argued that the plain language of the subsection also contemplated a contractual relationship between the property owner and a contractor, either actual or implied, for improvements to the property owner's property, and that in the absence of such a relationship, where the improvements were being made to *someone else's* property, the subsection did not apply. In response, the Court noted that control sufficient to establish liability under subsection 95.003(1) can be proven either by evidence of an agreement that

10

explicitly assigns the property owner a right of control *or* by evidence that the property owner actually exercised control over the manner in which the independent contractor's work was performed. 2014 WL 7183476, at *4. Since control sufficient to establish liability under subsection 95.003(1) could be shown through actual control, the Court rejected the Rosas' argument. *Id.*

In reaching this conclusion, the Court's "plain language" analysis again focused more on words *not* appearing in the subsection to the exclusion of those words *actually* appearing there. Subsection 95.003(1) specifically exempts three types of control from serving as a basis for property owner liability. These three types of control can *only* exist by virtue of a contractual relationship between the property owner and a contractor. Under the statute, these three types of control have been removed from the list of possible rights arising under a contract between a property owner and a contractor and exempted from serving as a basis for liability. They have been determined by the Legislature *not* to exhibit such a degree of control over the work as to charge the property owner with liability for failure to provide a safe workplace.

When the work giving rise to the injury takes place on *someone else's* property pursuant to a contract to which the property owner is *not* a party, as occurred here, the property owner would not have any basis on which to order the work to start or stop, or any basis on which to inspect the work, or any basis on

11

which to receive reports regarding the work. As a result, there would be *no* reason for exempting these powers from serving as a basis for statutory liability since the property owner would *never* possess them anyway. The statutory language would be rendered superfluous, in contravention of the general rules of statutory construction. It is only when the property owner is in a contractual relationship with a contractor for improvements to the property owner's property that the property owner might possess these contractual rights, thereby necessitating the statutory language exempting them as a basis for liability. The Court's opinion simply ignores this language.

Additionally, the fact that actual control can serve as a basis for property owner liability does *not* discredit the Rosas' argument. What the Court fails to note is that the exercise of actual control does not arise in a vacuum but presupposes a contractual relationship between the property owner and a contractor for improvements to the property owner's property. If there were no contract, and the improvements were being made to someone else's property, the property owner is not going to concern itself with how the work is progressing and therefore is not going to exercise control over that work. In this case, the work took place on AEP's property pursuant to a contract between AEP and Quality Pole. Mestena had no reason to concern itself with that work and therefore never attempted to exercise actual control over it.

Further, Mestena had no *basis* for exercising actual control. The work was on someone else's property and did not involve Mestena. Had Mestena attempted to exercise actual control over the work, it would have been sued for tortious interference with a contract. It is only when actual control is more than a theoretical possibility and can arise by virtue of work on the property's owner's property pursuant to a contract between the property owner and a contractor that actual control can serve as a basis for property owner liability. When the work occurs on *someone else's* property, and the prospect of the property owner exercising actual control over that work is virtually nonexistent, as in this case, the absence of actual control (or rather the absence of any *possibility* of exercising actual control) does not exonerate the property owner from liability under chapter 95. Rather, it shows that chapter 95 was *not* intended to apply to that particular situation, and that the property owner's liability should be adjudicated under the traditional, common-law rules of premises liability.

**II. Contrary to the Court's holding, the common law underlying chapter 95 also requires that there be a contractual relationship between the property owner and a contractor for improvements to the property owner's property before the property owner can avail itself of the protections afforded it under section 414 of the Restatement (Second) of Torts.**

The Court rejected the Rosas' contention that the common law underlying chapter 95 also contemplated a contractual relationship between the property owner and a contractor for improvements to the property owner's property. 2014

WL 7183476, at *5. In reaching that conclusion, the Court noted that in *Redinger v. Living, Inc.,* 689 S.W.2d 415 (Tex. 1989), the Supreme Court adopted section 414 of the Restatement (Second) of Torts as the common-law rule in Texas. *Id.* The Court then noted that chapter 95 codified *Redinger* on the issue of control but that it required actual, rather than constructive, knowledge of the dangerous condition. *Id.* With these preliminary observations out of the way, the Court abruptly concluded its discussion, saying that the common law did not support the Rosas' contention. *Id.*

Unfortunately, the Court failed to explain how it arrived at that conclusion, and the Rosas invite it to do so. Until then, a quick review of section 414 is in order. Section 414 is contained in chapter 15 of the Restatement (Second) of Torts, which is titled "Liability of an *Employer* of an Independent Contractor." Section 414 is titled "Negligence in Exercising Control Retained by *Employer*" and reads as follows:

> *One who entrusts work to an independent contractor*, but who retains the control of any part of the work, is subject to liability for physical harm to others, for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts §414 (1965) (emphasis added).

14

Comment (a) of the section consistently refers to the party "who entrusts work to an independent contractor" as the "employer of an independent contractor." Comment (c) of the section concludes as follows:

> In order for the rule stated in this Section to apply, the *employer* must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to *employers*, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Id*. at comment c (emphasis added).

One cannot *entrust* work to an independent contractor in the absence of a contractual relationship. One does not *employ* an independent contractor in the absence of a contractual relationship. Section 414 and its comments clearly support the Rosas' interpretation of chapter 95.

## III. The legislative history underlying chapter 95 supports the Rosas' "plain language" analysis of that chapter and was *not* offered as a substitute for that analysis.

The Court did not consider the legislative history underlying the enactment of chapter 95, saying that it was not permitted to do so since chapter 95 was not ambiguous. 2014 WL 783476, at \*5. The Court also said that even if it could consider legislative history, the comments of one legislator, albeit the bill's

sponsor, did not constitute evidence of the Legislature's collective intent when it enacted the bill. *Id*.

In response, it should be noted that the Rosas relied on legislative history *not* as a substitute for a "plain language" analysis of chapter 95 but as *supportive* of that analysis. This is precisely what the court did in *Fisher v. Lee and Chang Partnership*, 16 S.W.3d 198 (Tex. App. – Houston [1st Dist.] 2000, pet. denied), when it relied on the same legislative history to arrive at the currently accepted holding that chapter 95 applies even when the defective condition causing the employee's injury was not the object of the contractor's work.

**IV.    The Court should consider all arguments that might assist it in properly construing chapter 95.**

Finally, the Rosas argued that chapter 95 did not apply to this case because the real property to which the improvements were made was not the same real property that qualified Mestena to be a "property owner." The Court refused to consider this argument, saying that the Rosas had failed to present it to the trial court in their summary judgment response and therefore had waived it on appeal. 2014 WL 7183476, at *5.

Although an appellate court will not ordinarily consider an argument raised for the first time on appeal, it will address an argument if the issue is encompassed in the party's more general argument, and no new evidence is presented on appeal. *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1144 n.5 (8th Cir. 2007). Here,

16

the Rosas timely presented the more general argument in their summary judgment response (i.e., that although Mestena was a "property owner" under chapter 95, the chapter did not apply because Mestena did not contract with anyone to repair, renovate, or modify an improvement to real property owned by it). *CR 204*. Encompassed within that argument was the secondary argument that the Court refused to consider (i.e., that under the rules of statutory construction, the "real property" that qualified Mestena to be a "property owner" must be the same "real property" to which the improvements were made). The secondary argument was a legal argument, and did not require the introduction of new evidence. It was raised in the Appellants' Brief, and Mestena had ample opportunity to respond to it in its own brief. Mestena never raised the issue of waiver in its brief, presumably because it considered the secondary argument encompassed within the more general argument. If Mestena needed more time to respond to the secondary argument, it could have requested that. It did not.

More importantly, this case centers on the issue of statutory construction. The Court's ruling on that issue will affect not only the parties to this lawsuit but all other similarly situated parties throughout the Fourth Appellate District and beyond. One would assume that the Court would welcome all the assistance it could get to help it construe the statute properly, even if that assistance was first offered on appeal. After all, the Court would not want to settle upon an improper

17

construction of chapter 95 simply because it refused to consider the one argument that would have allowed it to arrive at a proper construction. As one court of appeals stated, "[W]hen we are considering the interpretation and application of statutes, we do not believe we can be limited to the arguments made by the parties if that would cause us to reach an incorrect result." *Evanstad v. State*, 178 Ariz. 578, 582, 875 P.2d 811, 815 (App. 1993). Accordingly, the Court should consider *all* arguments that might assist it in properly construing chapter 95.

## CONCLUSION

The Court should grant rehearing, vacate its opinion and judgment, and reverse the summary judgment below.

Respectfully submitted,

**Law Offices of David McQuade Leibowitz, P.C.**
One Riverwalk Place
700 N. St. Mary's Street, Suite 1750
San Antonio, Texas 78205
Telephone: (210) 225-8787
Facsimile: (210) 225-2567
E-mail: david@leibowitzlaw.com


*/s/* David McQuade Leibowitz
DAVID MCQUADE LEIBOWITZ
SBN: 12179800
JACOB SAMUEL LEIBOWITZ
SBN: 24066930

*ATTORNEYS FOR APPELLANTS*

18

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i), the undersigned hereby certifies that this brief contains 4,471 words, excluding those parts of the brief specifically exempted by Tex. R. App. P. 9.4(i)(1), as indicated by the word count of the computer program used to prepare the brief.

*/s/* David McQuade Leibowitz
DAVID MCQUADE LEIBOWITZ

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document was served via e-service and/or facsimile transmission and/or certified mail, return receipt requested, to the following persons on this the 16th day of January 2015:

Ms. Jacqueline M. Stroh
jackie@strohappellate.com
THE LAW OFFICES OF JACQUELINE M. STROH, P.C.
10101 Reunion Place, Suite 600
San Antonio, Texas 78216

Mr. Mike Mills
mkmills@atlashall.com
Ms. Susan Sullivan
ssullivan@atlashall.com
ATLAS, HALL & RODRIGUEZ, L.L.P.
818 W. Pecan
McAllen, Texas 78501

*Attorneys for Appellee*
*Mestena Operating, L.L.C.*

/s/ David McQuade Leibowitz
DAVID MCQUADE LEIBOWITZ