

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-20-00126-CV

Gabriel **CANTU**,
Appellant

v.

**C & W RANCHES, LTD.**,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 180361CVA
Honorable Jessica Crawford, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               Patricia O. Alvarez, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: April 28, 2021

REVERSED AND REMANDED

At issue in this appeal is whether changing the vinyl on a billboard sign constitutes a "modification" under chapter 95 of the Texas Civil Practice and Remedies Code. Because the undisputed facts as depicted in this appellate record do not show that the billboard sign was "modified," we conclude that chapter 95 does not apply. Therefore, we reverse the trial court's judgment and remand for further proceedings.

# BACKGROUND

Gabriel Cantu sued C & W Ranches, Ltd. ("C & W") for personal injuries he suffered on December 1, 2015, when he fell thirty feet from a billboard sign owned by C & W.[1] Cantu's employer, Media Displays, had been hired to "switch off the advertising copy," that is, to remove the vinyl from the old advertisement and hang vinyl from a new advertisement on the billboard sign located on C & W's property. A crane was used to place Cantu on two-by-fours running horizontal to the billboard sign. Cantu used his lanyard to anchor himself to poles on the billboard sign. Cantu took down the old advertisement and started hanging the new vinyl, which was larger than the previous vinyl. He thus needed to use the extensions that had been added to the billboard sign. He explained in his deposition how the extensions had not been properly installed:

> One, the two-by-fours that were screwed over from face to face on the—from—the two-by-fours that were horizontal. When they reached the ends of the board, they had another piece of plywood that went from face to face to those two two-by-fours and were screwed in or nailed in or—I believe it was screwed in. And the thing was those screws weren't long enough and weren't the right ones that should have been used according to OSHA.

Cantu testified in his deposition that he was "hooked up to the pole" and "gave a push with [his] foot" to make sure the extension did not move. He then hooked his lanyard "on to that two-by-four" and disconnected his other lanyard from the pole. He testified, "And I was grabbing around the end of the board to clamp the last part of that new vinyl we were installing, and that's all I remember as far as the fall after that." After falling thirty feet from the billboard, Cantu was taken to the hospital where he spent the next few weeks in a coma.

In response to Cantu's lawsuit, C & W filed a traditional and no-evidence motion for summary judgment. With respect to Cantu's negligence and premises liability claims, C & W

---

[1]Cantu also sued At Home Group, Inc., which constructed the allegedly faulty extensions to the billboard sign, and Federal Liquidation, Inc., the current tenant. Cantu's claims against Federal Liquidation were dismissed with prejudice. Cantu settled his dispute with At Home, and his claims were also dismissed.

argued in its traditional motion for summary judgment that chapter 95 of the Texas Civil Practice and Remedies Code applied. "Chapter 95 enunciates a general rule of non-liability for property owners when a contractor or subcontractor or an employee of a contractor or subcontractor is injured while performing repairs or construction." *Rosa v. Mestena Operating, LLC*, 461 S.W.3d 181, 184 (Tex. App.—San Antonio 2014, pet. denied). The property owner has the initial burden to establish that Chapter 95 applies. *Montoya v. Nichirin–Flex U.S.A., Inc.*, 417 S.W.3d 507, 511 (Tex. App.—El Paso 2013, no pet.). A property owner establishes that Chapter 95 applies if the plaintiff's claim is for "personal injury, death, or property damage" that "arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." TEX. CIV. PRAC. & REM. CODE § 95.002. Once the property owner establishes that Chapter 95 applies, the burden shifts to the plaintiff to establish that the property owner (1) exercised or retained some control over the manner in which the work was performed, other than the right to order the work to start or stop, or to inspect progress or receive reports, and (2) had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn the plaintiff of that danger or condition. *Id.* § 95.003.

C & W argued in its traditional motion for summary judgment that its summary judgment evidence showed that Cantu's personal injury claims against the property owner (C & W) arose from the condition of an improvement (the billboard) to real property where the contractor (Cantu, as an employee of Media Displays) modified the improvement (the billboard). Thus, C & W argued that its summary judgment evidence established as a matter of law that section 95.002 applied. Because under section 95.002 the burden at trial would then shift to Cantu, C & W argued in its no-evidence motion for summary judgment that Cantu had no evidence to show pursuant to section 95.003 that (1) the property owner (C & W) exercised or retained some control over the manner

in which the work was performed, other than the right to order the work to start or stop, or to inspect progress or receive reports; and (2) the property owner (C & W) had actual knowledge of the danger or condition resulting in the personal injury and failed to adequately warn. Cantu filed a response to C & W's traditional and no-evidence motion for summary judgment. After reviewing the motion and response, the trial court granted C & W's motion and ordered that Cantu should take nothing on his claims. He now appeals.

**CHAPTER 95**

I.      *Applicability of chapter 95*

Under the common law, an independent contractor or its employee can recover against a property owner for premises liability or negligence if the owner exercised some control over the relevant work and either knew or reasonably should have known of the risk or danger. *See Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). The legislature, however, in enacting chapter 95 of the Texas Civil Practice and Remedies Code granted protection to property owners from claims by independent contractors or their employees. *See Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 561 (Tex. 2016). When chapter 95 applies, it grants the property owner protection by requiring the plaintiff to prove that the owner "had actual knowledge of the danger or condition." TEX. CIV. PRAC. & REM. CODE § 95.003(2). Thus, if chapter 95 applies, a property owner is not liable based on merely what it reasonably should have known. *See Ineos*, 505 S.W.3d at 561.

As noted previously, under section 95.002, the property owner has the initial burden to establish the applicability of chapter 95. *See* TEX. CIV. PRAC. & REM. CODE § 95.002. A property owner establishes that chapter 95 applies if the plaintiff's claim is for "personal injury, death, or property damage" that "arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." *Id*. Once the property owner establishes that Chapter 95 applies, the burden shifts to the plaintiff to

establish that the property owner (1) exercised or retained some control over the manner in which the work was performed, other than the right to order the work to start or stop or to inspect progress or receive reports, and (2) had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn the plaintiff of that danger or condition. *See id*. § 95.003. Construing chapter 95, the Texas Supreme Court described sections 95.002 and 95.003, respectively, as being "the heart of the chapter," and observed that when conditions of section 95.002 are satisfied, a plaintiff's sole means of recovery requires satisfaction of both prongs under section 95.003. *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46, 51-52 (Tex. 2015); *see also Ineos*, 505 S.W.3d at 561.

## II.    Standard of Review

C & W's motion for summary judgment included traditional and no-evidence grounds. We review a trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In a traditional motion, the party moving for summary judgment has the burden to prove there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Defendants who move for summary judgment may meet this burden by either (1) disproving at least one essential element of each theory of recovery, or (2) conclusively proving all elements of an affirmative defense. *S & I Mgmt., Inc. v. Choi*, 331 S.W.3d 849, 852 (Tex. App.—Dallas 2011, no pet.). Evidence favorable to the respondent will be taken as true, and every reasonable inference will be indulged in favor of the respondent, resolving any doubts in its favor. *Nixon*, 690 S.W.2d at 549.

In contrast, once a no-evidence motion is filed, the burden shifts to the respondent to present evidence raising an issue of material fact as to the elements specified in the motion upon which the respondent would have the burden of proof at trial. *See* TEX. CIV. R. P. 166a(i); *Mack*

*Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). When a successful summary judgment movant presents both traditional and no-evidence grounds, we must affirm if summary judgment can be sustained under either standard. *Choi*, 331 S.W.3d at 853.

The facts of the instant case are unusual in that to be entitled to summary judgment, C & W needed to succeed on *both* its traditional and no-evidence grounds. That is, under its traditional summary judgment grounds, C & W had to establish as a matter of law that section 95.002 applied to Cantu's claims. Further, under its no-evidence grounds, C & W had to move that Cantu had no evidence to establish section 95.003's exception to the applicability of chapter 95. Thus, to have granted summary judgment on Cantu's claims against C & W, the trial court must have concluded that C & W established section 95.002 applied as a matter of law *and* that in response to C & W's no-evidence motion, Cantu had presented no evidence of the applicability of section 95.003's exception.

III.     *Did C & W establish as a matter of law that section 95.002 applied to Cantu's claims?*

The summary judgment evidence established as a matter of law that C & W was the property owner of an improvement to real property (the billboard) where an employee of a contractor (Cantu) suffered personal injuries. *See* Tex. Civ. Prac & Rem. Code § 95.002. None of the summary judgment evidence established as a matter of law that Cantu was "construct[ing], repair[ing], [or] renovat[ing] the improvement" the billboard. *See id*. At issue in this case is whether the summary judgment evidence established as a matter of law that Cantu's claims arose "from the condition or use of an improvement to real property" (the billboard) where Cantu was "modify[ing] the improvement." *See id*. Thus, we must determine what "to modify" means in the context of chapter 95.

- 6 -

"We review statutory construction de novo." *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014). We look to the plain meaning of the words in a statute as an expression of legislative intent. *Id*. "If the statute is clear and unambiguous, we must read the language according to its common meaning without resort to rules of construction or extrinsic aids." *Id*. (citations omitted). Thus, we initially limit our statutory review to the plain meaning of the text as the sole expression of legislative intent unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results. *See Tex. Lottery Comm'n v. First State Bank*, 325 S.W.3d 628, 635 (Tex. 2010).

Modify is not defined in Chapter 95. "In the absence of any authority to the contrary, we must apply the term's common meaning." *Ineos*, 505 S.W.3d at 563. The common meaning of modify is "to change somewhat the form or qualities of; alter partially." *Vela v. Murphy Expl. & Prod. Co.*, No. 04-18-00830-CV, 2019 WL 7196603, at *4 (Tex. App.—San Antonio Dec. 27, 2019, no pet.) (quoting *Webster's New Universal Unabridged Dictionary*); *Montoya v. Nichirin-Flex USA, Inc.*, 417 S.W.3d 507, 512 (Tex. App.—El Paso 2013, no pet.) (same). Cantu argues the summary judgment evidence does not establish as a matter of law that he was modifying the billboard when he fell. He compares changing the vinyl on the billboard to taking down a painting on a wall and hanging up a new painting. He emphasizes that the act of hanging a painting does not change the form or quality of the wall. In contrast, C & W argues that changing the vinyl on the billboard is "converting" signage "to announce the new tenant by 'installing' a new vinyl signage advertisement." C & W points out that changing the vinyl is "special work" that requires "use of a three-person crew to perform complex and dangerous tasks." While we agree that changing the vinyl on the billboard is dangerous work involving a specialized crew, whether work is dangerous or specialized is simply not a factor at issue in chapter 95. *See* Tex. Civ. Prac. &

REM. CODE §§ 95.002, 95.003. Instead, we must look to courts who have scrutinized what "modify" means in the context of chapter 95.

In researching, we have found no opinion that addresses the specific facts presented in the instant case. There are, however, several opinions that discuss whether the plaintiff was modifying the improvement to real property at the time he was injured. In *Vela*, 2019 WL 7196603 at *2, the plaintiff, an employee of a subcontractor, was injured at a well site. Located on top of the well "were several 8-foot wide, 40-foot long, 2,000-pound matting boards, and located on top of the matting boards were two 80,000-pound mud pumps." *Id*. "On the morning of June 29, 2012, using a T-Force crane and forklift, Vela, as the 'rigger' employed by T-Force, rigged up the two mud pumps to the crane and the T-Force crane operator maneuvered the pumps off the matting boards." *Id*. "The T-Force forklift operator then removed the matting boards." *Id*. "Without the matting boards covering the mouth of the [well], the [well] was unsecured and open." *Id*. "After the matting boards were removed from the mouth of the [well], Vela fell into the [well] while walking to retrieve his tagline." *Id*. The property owner argued the well was modified when the mud pumps, matting boards, and metal grate were removed from the mouth of the cellar in furtherance of the rig move operation. *Id*. at *4. This court held that "[b]y removing the mud pumps, matting boards, and other equipment positioned on top" of the well, the subcontractor and its employees modified the well "by altering and changing the [well] from its secured form into its unsecured form." *Id*. at *5. This court emphasized that it was the well's "altered state that contributed to Vela's injury." *Id*.

Similarly, in *Morales v. Alcoa World Alumina, LLC*, 2018 WL 2252901, at *9 (Tex. App.—Corpus Christi-Edinburg May 17, 2018, pet. denied), the court held that the improvement had been modified. The plaintiff's company, a subcontractor, was under contract to provide maintenance and repair services at the property owner's alumina refining facility. *Id*. at *1. "At

the facility, raw bauxite dirt is refined through the 'Bayer process' to produce pure aluminum oxide, or alumina." *Id*. "One of the steps of this process involves creating a solution of bauxite and sodium hydroxide called 'process liquor,' then pumping that solution through pipes, or 'risers,' to presses which filter the solution." *Id*. "Over time, the flow of process liquor in the risers causes solid residue to build up, and the risers must be periodically washed out with a cleaning solution known as 'caustic.'" *Id*. The facility "uses a system of solid and open 'blinds'—circular pieces of steel inserted between flanges—to control the flow of caustic and process liquor in the various risers." *Id*. The plaintiff was supervising a crew of employees who had been instructed to "swap out" "blinds on two of the risers at the plant." *Id*. "At the time, riser number 27 was being washed with caustic while riser number 25 contained liquor." *Id*. The subcontractor had been hired to "replace the solid blind on a pipe leading to riser 25 with an open blind that would allow caustic to flow into that riser." *Id*. When two subcontractor employees "unbolted a flange and removed the solid blind, they found that a hardened 'pancake' of scale had formed behind the blind, completely obstructing the pipe." *Id*. "They used a jackhammer to remove the scale deposit." *Id*. "When the jackhammer broke through the scale, hot liquor sprayed out of the pipe and onto [the plaintiff], causing him to suffer severe burns on his back and his right arm." *Id*. In considering these undisputed facts, the court concluded that "the swapping of blinds constitute[d] a modification to the pipe leading to the riser because it changed its form or qualities, allowing caustic to flow into the riser." *Id*. at *9. With regard to the jackhammering, the court noted that "although that activity may be described in an extremely narrow sense as being directed solely at the scale buildup, the objective of that activity was to modify the riser—which is undisputedly an improvement to [the property owner's] real property—so that caustic could flow into it." *Id*. The court thus held that chapter 95 applied. *Id*.

Unlike the above cases, Cantu was not changing the form or quality of the improvement by changing out the vinyl. The form and quality of the billboard as an improvement did not change. We agree with Cantu that the closest analogy is hanging a picture on a wall. Hanging the picture might add to the wall, but it does not change the form or quality of the wall itself. Consequently, we conclude that the summary judgment record does not show that chapter 95 applies to Cantu's claims. Therefore, the trial court erred in granting summary judgment based on the applicability of chapter 95.[2]

## CONCLUSION

Because the trial court erred in concluding chapter 95 applied to Cantu's claims, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Liza A. Rodriguez, Justice

---

[2]Having held that the summary judgment record does not support the applicability of chapter 95, we need not address Cantu's two remaining issues. Cantu's issue regarding whether the trial court should have granted summary judgment based on C & W's no-evidence grounds under section 95.003 was dependent on the applicability of chapter 95. Further, Cantu's issue that the trial court should not have granted C & W's objections to the evidence Cantu attached in response to C & W's no-evidence motion is moot as we have concluded C & W's summary judgment record does not support the applicability of chapter 95.