875 P.2d 811

Joseph O. EVENSTAD and Molly A. Evenstad, surviving parents of Brenda Kay Axline, deceased, John J. Johnson and Won P. Johnson, surviving parents of Tracy Kim Johnson, deceased, Plaintiffs–Appellants,

v.

STATE of Arizona, a body politic, Defendant–Appellee.

No. 1 CA–CV 91–0311.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 5, 1993.

Reconsideration Denied Oct. 6, 1993.

Review and Cross–Petition for Review Denied June 28, 1994.*

* Zlaket, J., of the Supreme Court, voted to grant review.

Haralson, Kinerk & Morey, P.C. by Dale Haralson, Gregory G. Wasley, R. Douglas Holt, Tucson, for plaintiffs-appellants.

Grant Woods, Atty. Gen. by Robert N. Hillock, Diane M. Miller, Asst. Attys. Gen., Phoenix, for defendant-appellee.

## OPINION

WEISBERG, Judge.

Brenda Kay Axline's parents and Tracy Kim Johnson's parents ("appellants") appeal the trial court's granting of summary judgment in this negligence/wrongful death suit. Because we hold that the State is shielded from appellants' claims by the absolute immunity provisions of Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–820.01, we affirm the summary judgment granted by the trial court.

## FACTS AND PROCEDURAL HISTORY

In August 1987, David M. Morales ("Morales"), while under the influence of alcohol, drove his car westbound in an eastbound lane of the I–10 highway. His car collided head-on with a car driven by Brenda Kay Axline. Axline and her passenger, Tracy Kim Johnson, both died as the result of injuries suffered in the collision. Morales was subsequently convicted of one count of driving under the influence and two counts of manslaughter.

Between 1966 and 1979, Morales had been convicted of driving while intoxicated on three separate occasions. In 1984, he was convicted of speeding on two separate occasions. In June 1985, Morales was again charged with driving while intoxicated. On September 11, 1985, Morales pled guilty to that charge in the Cochise County Justice Court.

Morales' driver's license expired on September 12, 1985. On that day he applied for and received a driver's license from the Arizona Department of Transportation Motor Vehicle Division ("MVD"). The MVD license application form completed by Morales did not include any questions relating to alcohol,

alcohol consumption, or alcoholism. Later that day, the Cochise County Justice Court suspended Morales' driver's license until October 10, 1985, restricted his license so that he could drive only to and from work for sixty days following the suspension, and ordered him to participate in alcohol screening and treatment through a local agency. Although the treatment agency assessed Morales as having a severe alcohol abuse problem and recommended a treatment program for him, Morales failed to complete the required program. Almost two years later, while still holding the license issued in September 1985, Morales caused the fatal accident that is the subject of this appeal.

In their complaint against the State, appellants alleged that Morales was a habitual drunkard when the State issued him a driver's license in September 1985. They asserted that the State should have denied Morales' application because it had good reason to believe that the operation of a motor vehicle by him would be "inimical to the public safety or welfare." They further alleged that, in the issuance of a driver's license to Morales, the State was grossly negligent and in violation of A.R.S. section 28–413(A)(4) and (8).[1] Finally, they asserted that the State's issuance of the license was a cause of the collision and the resulting deaths of their daughters.

The State moved for summary judgment, asserting both that it was immune from suit pursuant to A.R.S. section 12–820.02 and that there was no causal connection between the issuance of a license to Morales in 1985 and the accident in 1987. The State argued that it was immune from liability unless appellants could show that the MVD employee who had issued the driver's license to Morales was grossly negligent in doing so. The State pointed out that, because the only traffic violations on Morales' driving record within the five years prior to the accident were two speeding citations, the MVD employee had no basis to believe that Morales was a habitual drunkard. The State, therefore, concluded that the MVD employee could not have been grossly negligent. In addition, the State argued there was no causal relationship flowing from its issuance of the driver's license because Morales might just as well have driven his vehicle without a valid driver's license.

Appellants responded that their claims were not based on the assertion that the MVD employee had negligently processed Morales' application. Instead, they claimed that MVD had failed to implement procedures required by A.R.S. section 28–413 that would have identified Morales as either a habitual drunkard or a person whose operation of a vehicle would be inimical to public safety. If the State, through MVD, had implemented the required procedures, then MVD would not have issued a driver's license to Morales. They pointed out that A.R.S. section 12–820.02 did not immunize the State because it pertained only to ministerial acts such as whether a license should have been issued pursuant to existing MVD rules and regulations. They argued that the statute did not shield MVD from its failure to promulgate rules and regulations necessary to enforce A.R.S. section 28–413. Thus, appellants concluded, A.R.S. section 12–820.02 did not provide the State with qualified immunity for the failure of its administrative department to comply with statutorily mandated duties.

Furthermore, even if A.R.S. section 12–820.02 did provide the State limited immunity from acts of negligence, appellants pointed out that there still were two factual disputes prohibiting summary judgment in favor of the State. First, they argued that a genuine issue of material fact existed as to whether

---

1. A. The department [MVD] shall not issue a license:

    .     .     .     .     .

    4. To a person, as an operator or chauffeur, who is an habitual drunkard, or is addicted to the use of narcotic drugs.

    .     .     .     .     .

    8. To a person when the department has good cause to believe that the operation of a motor vehicle on the highways by the person would be inimical to public safety or welfare. A.R.S. § 28–413(A)(4), (8) (1989).

MVD was *grossly* negligent in failing to comply with its duty to prescribe rules and regulations necessary to enforce A.R.S. section 28–413. Second, they asserted that the State's argument that Morales would have driven the vehicle and caused the fatal accident even if he had been denied a license did nothing more than raise a question of fact that could be decided only by the trier of fact.

The trial court without comment granted summary judgment in favor of the State. Appellants filed a motion for reconsideration in which they argued that A.R.S. section 12–820.02 was unconstitutional. The trial court denied the motion for reconsideration. Appellants appealed from the judgment in favor of the State.

## DISCUSSION

### A.  *Applicability of A.R.S.*
### *Section 12–820.02*

On appeal, appellants argue that A.R.S. section 12–820.02 does not provide the State qualified immunity from liability in this situation because the real issue is whether MVD failed to promulgate rules and regulations pursuant to the mandatory provisions of A.R.S. section 28–413. It is irrelevant, they argue, whether an MVD employee properly followed the then existing MVD regulations when the driver's license was issued to Morales. They assert that the harm done by MVD arose out of its failure to adopt the required rules and regulations, and not from a MVD employee's failure to properly complete his assigned clerical tasks. Since this argument involves the interpretation of an Arizona statute, we are not bound by the trial court's conclusions of law. We therefore conduct a de novo review of the applicable statutes and regulations. *Libra Group, Inc. v. State*, 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991).

The legislature has afforded public employees qualified immunity in A.R.S. section 12–820.02, which provides in relevant part:

> Unless a public employee acting within the scope of his employment intended to cause injury or was grossly negligent, nei-

ther a public entity nor a public employee is liable for:

> . . . .
>
> 5.  The issuance of or failure to revoke or suspend any permit, license, certificate, approval, order or similar authorization for which absolute immunity is not provided pursuant to § 12–820.01.

A.R.S. § 12–820.02 (1992). Appellants maintain that this statute is inapplicable because their theory of liability is not premised on the fault of a public employee in issuing a license, which would fall under A.R.S. section 12–820.02, but instead is based on the failure of MVD to implement procedures required by A.R.S. section 28–413. In 1985, A.R.S. section 28–413 prohibited MVD from issuing a license to a "habitual drunkard" or when MVD had "good cause to believe that the operation of a motor vehicle on the highways by the person would be inimical to public safety or welfare." A.R.S. § 28–413. Appellants further point out that A.R.S. section 28–202 requires the director of MVD to promulgate rules and regulations as follows:

> A.  The director shall prescribe rules and regulations for enforcing the provisions of the laws he administers or enforces, shall designate the necessary agencies for that purpose and shall prepare and deliver to such agencies the forms required therefor. . . .

A.R.S. § 28–202(A) (1989). They argue that the plain language of this statute does not allow the director any discretion. Although appellants acknowledge that A.R.S. section 12–820.02 bears a superficial relevance to their claims because the issuance of a driver's license is involved, they maintain that the statute does not provide the State with qualified immunity for the failure of MVD to fulfill its duties imposed by A.R.S. sections 28–202 and 28–413.

We agree with appellants that the qualified immunity provisions of A.R.S. section 12–820.02 do not apply to the duty of MVD to prescribe rules and regulations. Other actions for which this statute does provide qualified immunity, e.g., the failure to make an arrest, granting of probation or parole, release of a prisoner from confinement, and failure to discover violations of any provision

of law requiring inspections of property, are all clerical or operational level functions. Operational level acts concern routine, every-day matters. They do not require evaluation of broad policy factors. *Rogers v. State*, 51 Haw. 293, 459 P.2d 378, 381 (1969) (matters such as kinds of road signs to place and where to place them and which center lines to repaint involved decisions made in every-day governmental operations). The routine issuance of a driver's license by an MVD employee falls within this definition of opera-tional level acts because it involves a normal, everyday function.

By contrast, prescribing those rules and regulations as are required by statute is not a routine, everyday function. Instead, it is an administrative function conducted at a policy-making level. Therefore, this function of MVD is not shielded by A.R.S. section 12–820.02.

### B. *Applicability of A.R.S. Section 12–820.01*

#### 1. Consideration on Appeal

■ The question whether section 12–820.01 gives the State absolute immunity in this case was not argued in the trial court. Generally, in such a situation, we would not address the issue on appeal. *See Dillig v. Fisher*, 142 Ariz. 47, 51, 688 P.2d 693, 697 (App.1984) (argument not raised before the trial court cannot be raised for the first time on appeal). This rule, however, is procedural and not jurisdictional. *Brown v. Arizona Pub. Serv. Co.*, 164 Ariz. 4, 6, 790 P.2d 290, 292 (App.1990). If application of a legal prin-ciple, even if not raised below, would dispose of an action on appeal and correctly explain the law, it is appropriate for us to consider the issue. *Rubens v. Costello*, 75 Ariz. 5, 9, 251 P.2d 306, 308 (1952). Furthermore, when we are considering the interpretation and application of statutes, we do not believe we can be limited to the arguments made by the parties if that would cause us to reach an incorrect result.[2]

#### 2. Absolute Immunity

■ Absolute immunity is provided for in A.R.S. section 12–820.01 as follows:

A. A public entity shall not be liable for acts and omissions of its employees consti-tuting:

1. The exercise of a judicial or legisla-tive function; or

2. The exercise of an administrative function involving the determination of fundamental governmental policy.

B. The determination of a fundamental governmental policy involves the exercise of discretion and shall include, but is not limited to:

1. A determination of whether to seek or whether to provide the resources neces-sary for:

(a) The purchase of equipment,

(b) The construction or maintenance of facilities,

(c) The hiring of personnel, or

(d) The provision of governmental ser-vices.

2. A determination of whether and how to spend existing resources, including those allocated for equipment, facilities and personnel.

3. The licensing and regulation of any profession or occupation.

A.R.S. § 12–820.01 (1992). Promulgating rules and regulations to enforce laws is not specifically mentioned in A.R.S. section 12–820.01. The statute indicates, however, that its coverage is not limited to the listed func-tions. We must therefore determine wheth-er the promulgation of rules and regulations by MVD constitutes either the exercise of a judicial or legislative function or the exercise of an administrative function involving the determination of fundamental governmental policy, as referred to by A.R.S. section 12–820.01(A).

Adopting administrative rules and regula-tions clearly is not a judicial function. It is akin to adopting laws and thus could be viewed as a quasi-legislative function. But,

---

**2.** Appellant and appellee were afforded the op-portunity to file supplemental briefs on this issue    on appeal.

because the director is to "prescribe rules and regulations for enforcing the provisions of the laws he *administers*," A.R.S. § 28–202(A) (emphasis added), this function, if it is to be shielded by A.R.S. section 12–820.01, must constitute the exercise of an administrative function involving the determination of fundamental governmental policy.[3]

There is no easy test for determining whether an administrative function is immune under A.R.S. section 12–820.01. In *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982), the Arizona Supreme Court wrestled with the issue of proper limits on the immunity of public entities:

> We deem an ad hoc approach to be most appropriate for the further development of the law in the field. We do not recoil from the thought that the legislature may in its wisdom wish to intervene in some aspects of this development.
>
> . . . .
>
> . . . we do not feel it appropriate to attempt to define the limited parameters of immunity in the abstract; we propose to define those limitations on the basis of concrete, factual situations as they come before us.

*Id.* at 310–11, 656 P.2d at 599–600.

Shortly thereafter, the legislature accepted the invitation to act in this area. A commission on governmental tort liability was established to propose a course of legislative action. The commission proposed the Arizona Governmental Tort Claims Act, which, with some modifications, was passed as sections 12–820 to –823. *See* Governor's Commission on Governmental Tort Liability, *Arizona Governmental Tort Claims Act,* at 11 (filed Dec. 16, 1983) ("Governor's Commission"). The commission adopted the "fundamental governmental policy" standard from the Restatement. *Id.* (citing Restatement (Second) of Torts § 895B(3)(b) (1979)). The commis-

sion explained that the "act . . . attempts to provide examples of the types of acts and omissions involving fundamental governmental policy." *Id.*

Unfortunately, the legislature's criteria for functions that receive absolute immunity under A.R.S. section 12–820.01 do not provide much illumination. The Restatement section upon which A.R.S. section 12–820.01 is based noted that the rule "expresses a standard rather than a precise rule and does little more than to offer guidelines for a court, directing its channels of thought in approaching the problem." Restatement (Second) of Torts § 895B, cmt. d. The commission's majority noted that "it is necessary that [situations that involve fundamental governmental policy] be identified by the courts as they arise." Governor's Commission, *supra,* at 11–12. Thus, we are left still largely with the ad hoc approach adopted in *Ryan,* guided by the examples given by the legislature.

Section 12–820.01 expressly provides a few examples of functions to which absolute immunity applies: determination of whether to seek or provide resources, determination of whether to spend existing resources, and licensing and regulation of any profession or occupation. A.R.S. § 12–820.01(B). By definition, these functions involve "fundamental governmental policy." *Bird v. State ex rel. Corbin,* 170 Ariz. 20, 23, 821 P.2d 287, 290 (App.1991). The statute notes, however, that these examples are not exhaustive. A.R.S. § 12–820.01(B). The first two examples involve determining the best internal operations of an administrative agency. They are similar in nature to the promulgation of rules and regulations under A.R.S. section 28–202, which also involves determination of internal agency policy. We note that courts have frequently distinguished the development of rules from the implementation of rules. *See Freeman v. State,* 705 P.2d 918, 920 (Alaska

---

**3.** The United States Supreme Court has developed a great body of analogous law interpreting the "discretionary function" exception of the Federal Tort Claims Act, *see* 28 U.S.C. § 2680(a) (1988); *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991) (planning-level decisions are protected by discretionary function exception); *Berkowitz v. United States,* 486 U.S. 531, 537, 108 S.Ct. 1954,

1959, 100 L.Ed.2d 531 (1988) (discretionary function exception only protects actions based on consideration of public policy); *Boyle v. United Technologies Corp.,* 487 U.S. 500, 511, 108 S.Ct. 2510, 2518, 101 L.Ed.2d 442 (1988) (selection of military equipment requires balancing technical, military, and social considerations and is a discretionary function); *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

1985) (applying a "planning/operational" test); *Little v. Utah State Div. of Family Servs.*, 667 P.2d 49, 52 (Utah 1983); *Petersen v. State*, 100 Wash.2d 421, 671 P.2d 230, 240–41 (1983); James L. Conlogue, Note, *A Separation of Powers Analysis of the Absolute Immunity of Public Entities*, 28 Ariz.L.Rev. 49, 57 & n. 64 (1986) ("implementation, as opposed to development of administrative rules and regulations does not involve the type of policy judgment requiring the protection of absolute immunity"). Although we do not adopt this criterion as a "bright-line test,"[4] we do find it useful in this case.

Appellants, in the instant case, make this same distinction when attempting to remove the alleged tortious conduct, failure to promulgate rules, from the qualified immunity arguably afforded by A.R.S. section 12–820.-02(5) to the issuance of a driver's license. As noted above, we agree that the alleged tortious conduct is not shielded by the qualified immunity of A.R.S. section 12–820.02 because promulgating rules is fundamentally different from the low-level duties performed at the license issuing stage. Promulgating rules involves the development of policy for the agency. The same reasoning, however, that compels us to find that negligent promulgation of rules is not shielded by qualified immunity under A.R.S. section 12–820.02, also compels us to hold that such a function is shielded as an administrative function involving fundamental governmental policy under A.R.S. section 12–820.01.

Appellants argue, and we agree, that use of the word "shall" in A.R.S. section 28–202 indicates that the director must prescribe rules and regulations to enforce the laws he or she administers. *See Insurance Co. of N. Am. v. Superior Court*, 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990). We disagree with appellants' further assertion that this language leaves the director without any discretion over the content of such rules and regulations. Promulgating rules and regulations governing internal agency policy, unless merely adopting specific statutory criteria, necessarily involves a "policy decision, consciously balancing risks and advantages."

Governor's Commission, *supra*, at 12 (quoting Restatement (Second) of Torts § 895B, cmt. d. The adoption of appropriate rules and regulations to enforce the legislature's mandate of removing drunk drivers from the roads is such a policy decision.

Absolute immunity is afforded such administrative functions to prevent the courts from making "a policy decision that is better left to the administrative officials." *Id.* We conclude that the promulgation of rules and regulations under A.R.S. section 28–202 is such a policy decision. Therefore, in relation to its actions under A.R.S. section 28–202 and –413, MVD is protected by absolute immunity.

### 3. MVD's Rules and Regulations

■ Appellants argue that the MVD director did not comply with his mandatory duty because he did not adopt rules and regulations for determining whether a person was a habitual drunkard, or an otherwise unfit driver, that would have enabled MVD license examiners to know when to refuse to issue a driver's license to such a person. The State responds that MVD Policy 300.15 and A.R.S. section 28–692.01 provide for the identification of those persons. We agree with the State.

MVD Policy 300.15 is entitled "Revocation: Habitual Negligence/Inimical To Public Safety." It provides that persons shall be categorized as habitually negligent and inimical to public safety if their prior sixty-month driving record shows (1) convictions of forty or more points, (2) any combination of three convictions for driving under the influence, reckless driving, hit and run involving death or injury, or exhibition of speed, or (3) any combination of three or more actions pending or served involving suspension or revocation, *and* one suspension or revocation period in effect or completed preceding the most recent points received on the record printout.

Appellants claim that this policy applies only to revocations, not to issuances of driver's licenses. The policy statement of Policy 300.15, however, provides that "ARS 28–413.-

---

4. Section 12–820.01 provides absolute immunity, even in the case of implementation, for regula-

tion of professions and occupations. *See Bird,* 170 Ariz. at 24, 821 P.2d at 291.

A.8 allows the Division to refuse driver license issuance to a person when there is good cause to believe that the continued operation of a motor vehicle on the highways by the person would be inimical to public safety." Thus, the policy contemplates that it would be used to deny the issuance of a license. In addition, Policy 300.15 provides that, once a person's license has been revoked, a new license will not be issued until the MVD "is satisfied after investigation of the character, habits and driving ability of the person that it will be safe to grant the privilege of driving a motor vehicle on the public highways." Although the policy refers to A.R.S. section 28–413(A)(8), it could enforce the habitual drunkard provision of subsection (4) as well because it would allow revocation or non-issuance of a license to any person who had three driving under influence convictions within the preceding sixty months.

Furthermore, A.R.S. section 28–692.01(F) provides that a person who is convicted of driving while intoxicated for the third time within sixty months must surrender his driver's license to the court. The court must then forward the license and abstract of conviction to MVD. Upon receipt, MVD must revoke the driving privileges of that person, and it may not issue the person a new driver's license within three years of the date of conviction. Like Policy 300.15, this statute impliedly defines a habitual drunkard as a person who has received three driving under the influence convictions within five years.

Although the director might have promulgated other rules and regulations to accomplish the legislative goals, he may have believed that MVD Policy 300.15 and A.R.S. section 28–692.01 were sufficient to enable the department to efficiently deny driver's licenses to persons who were habitual drunkards and whose operation of motor vehicles would be inimical to public safety. Appellants suggest that the driver's license application should have included a question asking whether the applicant was a habitual drunkard or alcoholic. Notwithstanding, despite

the fact that the problem of unfit drivers could have been addressed in other ways by MVD, that does not mean that immunity from liability should not apply to the State in this instance. By adopting A.R.S. section 12–820.01, the legislature directed that neither litigants nor the courts may second-guess discretionary fundamental governmental policy decisions made by State departments at the administrative level. Accordingly, we shall not do so.

Appellants also argue that their theory of the State's liability is supported by *Oleszczuk v. State*, 124 Ariz. 373, 604 P.2d 637 (1979). In *Oleszczuk*, the court considered the issue of whether MVD breached "a duty to the plaintiffs when they issued a driver's license to a person with a known history of psychomotor seizures." *Id.* at 374, 604 P.2d at 638. The plaintiffs in *Oleszczuk* based their claims on three allegations: (1) that MVD failed to keep a record of the driver's previous accidents and license cancellations, as required by statute, (2) that MVD failed to establish a Medical Advisory Board, as required by statute, and (3) that a MVD employee filled in an incorrect answer on the driver's license application. *See id.* at 375, 604 P.2d at 639.

Appellants' reliance on *Oleszczuk* is inapposite. *Oleszczuk* dealt with whether the statutory duty related to the issuance of drivers' licenses was specific enough to make the State liable under the *Massengill* doctrine.[5] The *Oleszczuk* court found that, under the *Massengill* doctrine, issuance of drivers' licenses does create a specific duty for the breach of which public entities can be liable. This holding does not apply to the case at bench. Because the *Massengill* doctrine has been overruled, *see Ryan*, 134 Ariz. at 310, 656 P.2d at 599, specificity is no longer a relevant issue. Clearly, MVD may be held liable for the grossly negligent issuance of drivers' licenses. *See* § 12–820.02(5); *Bird*, 170 Ariz. at 23, 821 P.2d at 290 (dicta) (qualified immunity applies to issuance of driver's license). Appellants' argument in the instant case, however, is that the tortious act was the

---

**5.** *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969), set out standards for determining whether a public entity was liable depending on whether the injury was "public" or "private"; that is, based on the specificity of the duty. The *Massengill* doctrine was overruled by *Ryan*, 134 Ariz. at 310, 656 P.2d at 599.

failure of MVD to promulgate rules, not the negligent issuance of a driver's license. *Oleszczuk* does not reach the issue of whether a public entity can be liable for failure to promulgate rules.

Because we find that MVD did promulgate at least some rules pursuant to its statutory mandate, we hold that A.R.S. section 12–820.01 applies to provide absolute immunity to the State for these discretionary administrative actions. Although this was not the basis on which the trial court granted summary judgment in favor of the state, we affirm the trial court because it reached the correct result even if it did so based upon an incorrect reason. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982).

### 4. Constitutionality

#### a. Abrogation Clause

The Arizona Constitution provides the following: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Ariz. Const. art. 18, § 6. Appellants argue that by providing the State absolute immunity from this negligence action, the legislature has abrogated appellants' right of action and, therefore, that A.R.S. section 12–820.01 is unconstitutional.

The general rule of governmental immunity from tort liability was abandoned by the Arizona Supreme Court in 1963. *Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 387, 381 P.2d 107, 109 (1963). The court continued, however, to recognize immunity in some areas: "we must hasten to point out that certain areas of immunity must remain. The more obvious of such immunities are legislative immunity, judicial immunity, and high-level executive immunity." *Ryan*, 134 Ariz. at 310, 656 P.2d at 599. In Arizona, injured parties have never had a cause of action for tort recovery against legislative, judicial, or high-level executive bodies acting in their official capacities. As a result, A.R.S. section 12–820.01 does not abrogate anything; it simply codifies the "obvious" immunities expressly recognized in *Ryan*.

We hold that, because neither the Arizona courts nor the legislature has ever recognized a right of action against public entities for conduct shielded by A.R.S. section 12–820.01, the Arizona Constitution does not guarantee a cause of action for such conduct against those public entities.

#### b. Equal Protection

Appellants also claim that article 2, section 13 of the Arizona Constitution and the Equal Protection Clause of the United States Constitution invalidate A.R.S. section 12–820.01. Appellants correctly argue that, on an equal protection challenge to legislation affecting fundamental rights, courts must apply a "strict scrutiny" test. *See Kenyon v. Hammer*, 142 Ariz. 69, 78–79, 688 P.2d 961, 970–71 (1984). Appellants also correctly note that a fundamental right is one that is "explicitly or implicitly guaranteed by the Constitution." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973). Appellants construe article 18, section 6 of the Arizona Constitution to be such an express guarantee. We disagree.

In accordance with the previous section, we hold that article 18, section 6 does not guarantee a cause of action against the public entities listed in A.R.S. section 12–820.01 and, therefore, there is no fundamental right to such a cause of action. We apply the "rational basis" test, that "upholds legislative regulation which imposes burdens on one class but not another so long as (1) the court can find some legitimate state interest to be served by the legislation and (2) the facts permit the court to conclude that the legislative classification rationally furthers the state's legitimate interest." *Kenyon*, 142 Ariz. at 78, 688 P.2d at 970. In connection with A.R.S. section 12–820.01, the state's legitimate interest is to "avoid severe hampering of a governmental function or thwarting of established public policy." *See Ryan*, 134 Ariz. at 311, 656 P.2d at 600. We conclude that A.R.S. section 12–820.01 "rationally furthers" this interest and therefore reject appellants' equal protection challenge.

c. Due Process

Appellants lastly challenge A.R.S. section 12–820.01 under article 2, section 4 of the Arizona Constitution and the Due Process Clause of the United States Constitution. Appellants argue that they are denied reasonable access to the courts. "Under the due process clause, legislation will be considered constitutional if the particular statute is not unreasonable, arbitrary or capricious, and if the means selected in the statute have a real and substantial relation to the goals sought to be obtained." *Bryant v. Continental Conveyor Equip. Co, Inc.*, 156 Ariz. 193, 197, 751 P.2d 509, 513 (1988). Because we have already held that the statute furthers a legitimate state interest, that of protecting the governmental policy-making function, we find that A.R.S. section 12–820.01 is related to that goal. We therefore reject appellants' due process challenge.

We hold that A.R.S. section 12–820.01 is constitutional.

## CONCLUSION

We hold that the State is shielded from appellants' claims by the absolute immunity provisions of A.R.S. section 12–820.01.

We therefore affirm the summary judgment granted by the trial court.

JACOBSON, P.J., and GERST, J., concur.

NOTE: The Honorable Stephen A. Gerst, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 3 of the Arizona Constitution.