IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

JAYLYN BOTTOMLEE,
*Plaintiff/Appellant*,

*v.*

STATE OF ARIZONA, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 19-0016
FILED 1-28-2020

Appeal from the Superior Court in Maricopa County
No.  CV2017-013064
The Honorable Joseph C. Welty, Judge

**AFFIRMED IN PART, REVERSED IN PART; REMANDED**

COUNSEL

Stewart & Davis, PC, Phoenix
By Joseph T. Stewart
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Michael G. Gaughan, Kara L. Klima
*Counsel for Defendants/Appellees*

**OPINION**

Judge Diane M. Johnsen delivered the opinion of the Court, in which Presiding Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

**J O H N S E N**, Judge:

¶1          The mother of an infant who suffocated and died at a Phoenix daycare center sued the State of Arizona, alleging a state inspector was grossly negligent in directing the daycare to place the child face-down on a pillow during "tummy time."  We hold the complaint stated a claim for gross negligence, reverse the dismissal of that claim, affirm the dismissal of other claims and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶2          "Tummy time" is a child-development technique aimed at building an infant's upper-body strength and balance.  As implied by the name, an infant is placed on his stomach while awake, at first for just a minute or so, then for longer periods as he becomes better able to hold up his head.  The amended complaint here cited a "tip sheet" the Arizona Department of Health Services ("Department") issued to daycare providers warning that during tummy time, an infant should be placed on a "flat, clean surface, such as a blanket or play mat on the floor."  According to federal authorities cited in the complaint, an infant placed on a pillow for tummy time might slip down into the pillow and suffocate.

¶3          Jaylyn Bottomlee's amended complaint alleged her six-month-old son, Gabriel, died at a facility owned and run by Lil World Daycare, LLC.  Bottomlee alleged that Frederick Geyser, a "Licensing Surveyor" in the Department's Child Care Licensing Section, visited Lil World to investigate a report that the daycare was violating a Department rule by putting infants to sleep in cribs with Boppy pillows – C-shaped soft pillows typically used to hold an infant for feeding.  Bottomlee alleged that when Geyser arrived at Lil World, he saw Gabriel and other infants sleeping in their cribs with Boppy pillows.  According to the complaint, having confirmed that Lil World was violating the ban on pillows in infants' cribs, Geyser ordered the daycare to use the pillows instead only "on the floor for tummy time."  Bottomlee alleged Geyser "developed, endorsed and signed" a Plan of Correction for Lil World that expressly mandated: "All pillows will be removed today [from cribs] and use[d] on the floor for tummy time only."

¶4          One morning less than two weeks later, a Lil World worker fed Gabriel a bottle, then draped him atop a Boppy pillow for tummy time. According to the complaint, the worker left Gabriel unattended, and, after

a bit, the infant slipped down into the pillow and suffocated. He was pronounced dead at the hospital.

¶5            In her wrongful-death suit, Bottomlee alleged the corrective plan Geyser issued to Lil World

> ignored and violated the State's published policy on tummy time, as well as well-established research and recommendations in the medical and scientific communities, and published reports from the United States Consumer Product Safety Commission and the United States Food and Drug Administration warning that nursing pillows present a high risk of suffocation to infants and that such pillows should never be placed under infants.

Bottomlee alleged Geyser acted with gross negligence in directing Lil World to place Gabriel and the other infants on pillows during tummy time. She also alleged the Department, its director and the State were liable for Geyser's gross negligence by virtue of *respondeat superior*.

¶6            The superior court granted the defendants' motion to dismiss Bottomlee's amended complaint for failure to state a claim. After the court denied Bottomlee's motion for a new trial, she timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2020) and -2101(A)(1) (2020).[1]

## DISCUSSION

¶7            "We review *de novo* the dismissal of a complaint for failure to state a claim and will affirm only if the plaintiff 'would not be entitled to relief under any interpretation of the facts susceptible of proof.'" *Stair v. Maricopa County*, 245 Ariz. 357, 361, ¶ 11 (App. 2018) (citation omitted); *see* Ariz. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim upon which relief can be granted, we "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

¶8            "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal

---

[1]            Absent material revision after the relevant date, we cite the current version of a statute or rule.

connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). "Duty is defined as an 'obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm.'" *Id.* at ¶ 10 (quoting *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354 (1985)). "Such an obligation may arise from 'either recognized common law special relationships or relationships created by public policy.'" *Stair*, 245 Ariz. at 361, ¶ 12 (quoting *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 565, ¶ 14 (2018)). Whether a duty exists "is a matter of law for the court to decide." *Gipson*, 214 Ariz. at 143, ¶ 9.

## A.     Defendants' Duty to Gabriel and His Mother.

**¶9**          In dismissing the complaint, the superior court accepted the defendants' argument that Bottomlee failed to allege facts to support a duty that might give rise to a claim in tort.[2]

**¶10**          On appeal, the defendants liken daycare investigators to law-enforcement officers who investigate reports of crimes "and author reports." As with law enforcement, the defendants argue, their duty in this context is to the general public, not to any individual child or parent. But under Arizona law, acts by law-enforcement officers may create a special relationship giving rise to a duty owed to a specific individual. *See Noriega v. Town of Miami*, 243 Ariz. 320, 327-28, ¶¶ 29, 32 (App. 2017); *Hogue v. City of Phoenix*, 240 Ariz. 277, 280-81, ¶ 12 (App. 2016). That is, although "police do not owe a duty to every citizen within their jurisdiction from all potential harms," *Noriega*, 243 Ariz. at 327, ¶ 29, when they "endeavor to provide specific protection to a particular person, they generally . . . have 'a duty to act as would a reasonably careful and prudent police department in the same circumstances,'" *Hogue*, 240 Ariz. at 280, ¶ 12 (quoting *Austin v. City of Scottsdale*, 140 Ariz. 579, 581-82 (1984) (duty may exist when acts by police have "narrowed the obligation owed to the general public into a specific obligation owed" to an individual)); *see also Hutcherson v. City of Phoenix*, 192 Ariz. 51, 55-56, ¶ 26 (1998) (by creating 9-1-1 system, city accepted duty to

---

[2]          Beyond gross negligence by Geyser, attributed to the other defendants through *respondeat superior*, Bottomlee also alleged claims titled "Gross Negligent Failure to Investigate," "Gross Negligent Investigations," "Gross Negligent Failure to Monitor the Daycare," "Gross Negligent Hiring," "Gross Negligent Training" and "Gross Negligent Supervision." On appeal, she does not contest the dismissal of the other claims.

respond reasonably to emergency calls), *abrogated in part on other grounds by State v. Fischer*, 242 Ariz. 44 (2017).

¶11     Under these authorities, Geyser effectively "endeavor[ed] to provide specific protection" to the infants in Lil World's care when, having confirmed that the daycare was violating Department infant-care regulations, he ordered the daycare specifically how to correct its violation. *See Hogue*, 240 Ariz. at 280, ¶ 12.  The consequence was the creation of a special relationship with those infants that gave rise to a duty of due care with respect to the particulars of the Plan of Correction that Geyser directed the daycare to follow.

¶12     The defendants seem to argue that no duty can be imposed under these circumstances absent an assurance of protection made directly to the plaintiff.  To be sure, *Hutcherson*, 192 Ariz. at 52, ¶¶ 1-7, and *Noriega*, 243 Ariz. at 322-23, ¶¶ 4-6, both involved victims who were harmed after they came to law enforcement for protection.  But the defendants offer no support for the proposition that a special relationship cannot exist in the absence of a representation by the public entity *to the plaintiff*.  In *Austin*, our supreme court ruled a duty to the eventual victim was created when a third party called police to report that the victim might be in danger, and the dispatcher said police would "keep an eye out."  140 Ariz. at 579-82.

¶13     Here, the complaint alleged Geyser received a report that Lil World was violating infant-care regulations, responded to that complaint and issued a corrective action plan that Bottomlee alleges was grossly negligent.  By directing the manner in which the daycare was to remedy its violation, Geyser on behalf of the Department created a special relationship with the infants at Lil World, including Gabriel, just as law enforcement in the cited cases created special relationships by receiving and responding to reports of threats.[3]

## B.   The State Defendants Are Not Absolutely Immune from the Claims.

¶14     The State and the Department argue that even if the first two claims in the amended complaint properly allege a duty of care, the State and the Department are immune from those claims under A.R.S. § 12-820.01

---

[3]     Having found the existence of a special relationship that gave rise to a duty of due care, we need not address Bottomlee's alternative argument that Geyser and the State defendants owed her and her son a duty arising out of public policy reflected in statutes and regulations.

(2020). We narrowly construe a statute that grants immunity to public entities. *Doe ex rel. Doe v. State*, 200 Ariz. 174, 176, ¶ 4 (2001).

¶15 In relevant part, the statute states:

> A. A public entity shall not be liable for acts and omissions of its employees constituting . . . :
>
> * * *
>
> 2. The exercise of an administrative function involving the determination of fundamental governmental policy.
>
> B. The determination of a fundamental governmental policy involves the exercise of discretion and shall include, but is not limited to:
>
> * * *
>
> 2. A determination of whether and how to spend existing resources, including those allocated for equipment, facilities and personnel.
>
> 3. The licensing and regulation of any profession or occupation.

A.R.S. § 12-820.01.

¶16 The State and the Department argue § 12-820.01(B)(3) applies to Bottomlee's first and second claims for relief because those claims arise from the "licensing and regulation of any profession or occupation." In *Doe*, however, our supreme court held the absolute immunity that § 12-820.01 grants to "fundamental governmental policy determinations involving the licensing of professions and occupations" does not apply to "particular decisions to grant or revoke licenses." 200 Ariz. at 177, ¶ 9. Instead, the latter class of decisions is afforded only qualified immunity under A.R.S. § 12-820.02 (2020). *Doe*, 200 Ariz. at 177, ¶ 9. By way of example, the court observed that a policy decision to issue teaching certificates to applicants who have been convicted of certain minor crimes would be a decision by the State afforded absolute immunity under § 12-820.01. *Id.* at ¶ 10. "If, however, the State erred in its processing of a particular teaching application and issued a certificate to someone convicted of one of the listed offenses, only qualified immunity would apply." *Id.*

**¶17**        Bottomlee's first and second claims for relief do not implicate any policy decision by the Department but instead, as in *Doe*, concern "application of those policies to individual cases." *Id.* at ¶ 11 ("[A]bsolute immunity extends to the regulation and licensing of a profession as a whole, rather than to a decision to grant a license to a particular member of that profession."). Accordingly, § 12-820.01(B)(3) does not grant the State and the Department absolute immunity from those claims.

**¶18**        The Department also cites *Evenstad v. State*, 178 Ariz. 578 (App. 1993), in which we held § 12-820.01 immunized the State from a claim that the Department of Transportation Motor Vehicle Division should have implemented procedures to identify driver's license applicants with known drinking problems. 178 Ariz. at 579-80, 583-84 (statute immunizes promulgation of rules and procedures as a "determination of internal agency policy"). But no such policy decision is at issue here. Bottomlee does not allege the Department failed to enact appropriate safety rules for daycare facilities; instead, she alleges that, having enacted rules requiring Lil World to safely care for infants, including Gabriel, and having confirmed that the daycare had violated those rules, it acted with gross negligence when it directed the daycare how to correct its violation.

## CONCLUSION

**¶19**        For the reasons stated, we vacate and remand the dismissal of Bottomlee's first and second claims for relief, which allege gross negligence and liability under *respondeat superior*. We affirm the dismissal of the other claims in the amended complaint. Bottomlee is entitled to her costs on appeal contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.

